## CLARK v. UNITED STATES.
### No. 47009.

Court of Claims.
July 7, 1947.

Lloyd Paul Stryker, of New York City (Harold W. Wolfram, of New York City, on the brief), for plaintiff.

Edgar T. Fell, of Baltimore, Md., and John F. Sonnett, Asst. Atty. Gen. (Edward L. Metzler, of Washington, D. C., on the brief), for defendant.

Before BOOTH, Chief Justice (retired), recalled, WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHITAKER, Judge.

Plaintiff, William Clark, sues for the salary to which he claims he is entitled as a judge of the United States Circuit Court of Appeals for the Third Circuit from August 15, 1945, to the date of rendition of judgment.

Shortly after the outbreak of World War II, to wit, on January 30, 1942, plaintiff wrote the President of the United States stating that he desired to serve in the armed forces of his country, and on February 16, 1942 he applied to the Adjutant General of the United States Army for appointment as Lieutenant Colonel, Field Artillery, Officers' Reserve Corps. On March 8, 1842 he was appointed a Lieutenant Colonel, and on March 10 he was directed to report to the Chief of Staff for duty. On March 24, 1942 he took his oath of office as a Lieutenant Colonel in the Army of the United States.

As of the last mentioned date, plaintiff wrote the President of the United States a letter submitting his resignation as Circuit Judge of the United States Circuit Court of Appeals for the Third Circuit, in order to accept a commission in the Army of the United States. This letter follows:

"United States Circuit Court of Appeals
"Third Judicial Circuit
"Chambers of Judge Clark.
"Newark, N. J., March 24, 1942.
"The Honorable Franklin D. Roosevelt,
"The White House, Washington, D. C.
"Dear Mr. President: This letter submits my resignation as Circuit Judge of the United States Circuit Court of Appeals for the Third Circuit. I am doing this because I am today taking the oath of office as a Lieutenant Colonel in the Army of the United States. I am reporting to the General Staff for duty and I hope will eventually be sent to some field or foreign post where I can be useful. I thought that my military experience might well justify more than a transfer from one desk to another. I have most enthusiastically followed your awareness of what we have been facing in the world and with you I agree that "business as usual" or "courts as usual" must not continue. As I have on occasion expressed myself to that effect, I have wanted to practice what I have been preaching.

"God keep you in your task of leading us all to victory.

"Respectfully,
"(Sgd.) William Clark,
"William Clark."

As of the same date plaintiff wrote the President another letter, the first and last paragraphs of which were identical with the foregoing letter, but which contained, in addition, the following paragraph:

"It would be hypocritical for me to pretend that I should not like to have you accede to the request of my colleagues that the Congressional precedent be followed and leave of absence be granted. I have been a judge now for eighteen years, most of my adult life. I love the work and to give it up even for a short time is a great sacrifice. Because of that, however, I feel I am too closely concerned to be able to say what should be done. For this reason, I feel I must leave the decision to you."

The President replied on March 26 as follows:

"March 26, 1942.

"Honorable William Clark,

"United States Circuit Court of Appeals,

"Princeton, New Jersey.

"My dear Bill

"Since talking to you the other day, I have been advised that under the law your voluntary entry into the military service will not permit the retention of your commission as United States Circuit Judge.

"Under the circumstances I must regretfully accept your resignation from the judicial post.

"With appreciation for your long and able service, and for the patriotism which has moved you to your present choice, I am

"Very sincerely yours,

"Franklin D. Roosevelt."

On April 2, 1942, plaintiff wrote the President as follows:

"United States Circuit Court of Appeals

"Third Judicial Circuit

"Chambers of Judge Clark.

"Newark, N. J., April 2, 1942.

"Honorable Franklin D. Roosevelt.

"President of the United States,

"Washington.

"Dear Franklin:

In these times I hesitate to trouble you with anything personal. However, as we talked about the matter, I feel I should.

"Our friend Frances [sic] seems to me to have unnecessarily complicated the matter of my resignation. As I said to you, I was unwilling to follow the selfish precedent of our Congressional friends and therefore feel I should submit my resignation as a judge. You very generously rejected it and I think I am safe in saying that action on your part met with universal approval.

"I try to be careful about the law, particularly when dealing with my President and Commander-in-Chief. I was quite familiar with the statute on which the Attorney General has advised you. It was intended to prevent the receipt of two salaries. Only by a trained construction can it be extending to what is known as 'incompatible office

holding.' However, I was careful about even that strained construction, and discovered that the Act (it is found, I believe, U.S.C.A., title 8, Section 65) is in process of amendment, the amending bill being H.R. 6676 introduced March 11th and made retroactive to December 7, 1941. It would, therefore, be rather foolish to have me declared ineligible pending the passage of the bill which would make me perfectly eligible.

"Due to your kindness I am going to a far distant post and imagine I will be there for such length of time that I should have to insist on resigning in any event. It is my suggestion, however, that your recent letter might well be withdrawn pending a clarification of the legal situation. As I say, I think I shall have to resign in any event but I should be very reluctant to be forced out, so to speak, on the doubtful interpretation of a statute.

"My address from Saturday until probably Wednesday will be the Fairmont Hotel, San Francisco, where I could be reached by telegraph from General Watson, or in any other way.

"In conclusion, again thanking you for all your kindness, and be sure that I follow you with my usual affection and admiration.

"Yours sincerely,

"William Clark."

The President replied to this letter by telegram on April 7, 1942, as follows:

"Your letter of April 2nd received. In view of the doubt which H.R. 6766 [sic] is intended to remove, I think the wisest thing to do is to let your resignation stand.

"Franklin D. Roosevelt."

Plaintiff received this telegram, but made no further reply.

Subsequently, the President nominated Gerald McLaughlin to be Judge of the United States Circuit Court of Appeals for the Third Circuit, vice William Clark, resigned. On June 8, 1943 Judge McLaughlin's nomination was confirmed by the Senate, and he was subsequently appointed.

1. Notwithstanding the submission of his resignation as Judge of the Circuit Court of Appeals for the Third Circuit and

its acceptance by the President and the subsequent appointment of a successor to the office, plaintiff nevertheless says that under the Constitution he still holds the office and is entitled to the salary attached to it. He grounds this contention on the alleged fact that when his letter of resignation was presented to the President at an interview plaintiff had with him, the President refused to accept it.

■ Plaintiff properly says that under the Constitution judges of both the Supreme and inferior courts are completely independent of the Executive Department of the Government and that they can be removed from office only by resignation or by impeachment by the House of Representatives and conviction by the Senate. Cf. O'Donoghue v. United States, 289 U.S. 516, 53 S.Ct. 740, 77 L.Ed. 1356, and citations there given. Since he has not been impeached and convicted, plaintiff says he is still in office because his voluntary resignation was rejected by the President.

■ We cannot agree that the rejection by the President of a judge's resignation, without more, continues that judge in office. His continuance in office, in the absence of impeachment and conviction, from a legal standpoint, is subject wholly and alone to the untrammelled will of the judge. The President of the United States has nothing whatever to do with it, unless the judge of his own volition leaves to the President the decision as to whether or not he shall continue in office. If a judge wishes to resign, he, of course, may do so, whether the President wants him to or not; and, on the other hand, neither the President nor anyone else has the legal right to force him to resign.

The only constitutional reason, so far as we know, for submitting to the President an unequivocal resignation of a judge is for the purpose of notifying the President that there exists a vacancy in the office so that the President may exercise his constitutional power of appointing a person to the vacancy. It is not submitted because it is within the power of the President to accept or reject it.

■ When a judge, being wholly independent of the Executive Department, once submits his unequivocal resignation, a vacancy in the office is thereby created, independent of any action on the part of the President, [1] and the President, with the advice and consent of the Senate, is thereupon empowered under the Constitution to fill the vacancy, unless the judge has the power to withdraw his resignation prior to the time the vacancy is filled, or prior to acceptance by the President.

We express no opinion on the power of the judge to withdraw his resignation before acceptance by the President or before the vacancy has been filled, but, for the purposes of this case, we shall assume that he has this power.

■ If plaintiff submitted an unequivocal resignation and the President nominated another judge to succeed him, and the Senate confirmed the nomination, and the appointment was made, plaintiff thereby unquestionably relinquished his office and lost all right to it, unless he withdrew his resignation prior to the appointment of his successor. Whether or not the President rejected plaintiff's resignation when it was presented to him is material only as a circumstance to consider in determining whether or not plaintiff either expressly or impliedly withdrew it before acceptance or before his successor was appointed.

If, on the other hand, plaintiff's resignation was equivocal, as it was in the longer of the two letters, we think the result is the same, because in this letter he also resigned, but, while expressing the hope that a leave of absence might be arranged, he nevertheless said, "I must leave the decision to you," and the President decided the matter by accepting his resignation.

The proof does not clearly show whether or not this longer letter ever came to

[1] None of the cases cited by plaintiff relate to a judge and are, therefore, of no authority here. The authorities are not in agreement on the necessity for the acceptance of a resignation of an officer in the executive department, in order to create a vacancy, but even in the case of such an officer Mr. Justice McLean, when on Circuit, held in the case of United States v. Wright, 28 Fed. Cas. No. 16775, p. 792 that his resignation, without more, created a vacancy.

the President's personal attention, although it was submitted; but it does show that it was the unequivocal letter of resignation upon which the President acted. On the margin thereof the President wrote, "Atty Gen to prep reply FDR." But, undoubtedly, at an interview plaintiff had with the President when the letter or letters were submitted the question of a leave of absence was discussed, whether or not this second letter ever came to the President's attention.

■ But we do not think it makes any difference, in the view we take of the case, whether the resignation was unequivocal or not, since in any event plaintiff left to the President the decision as to whether his resignation should stand or he should go on leave of absence. If plaintiff made his resignation conditional upon the President's decision to accept it, he is still foreclosed because the President did accept it, provided it had not been withdrawn before acceptance. If we regard his resignation as unequivocal, his case is no worse, because we are assuming that he had a right to withdraw it before the President had acted upon it by the appointment of his successor.

Plaintiff's case rests on what happened at his interview with the President on March 24, 1942, the date of his letters of resignation. As a result of that interview, are we justified in concluding that the plaintiff either expressly or impliedly withdrew his letter of resignation, or that the President then finally decided the question that may have been presented to him of whether plaintiff should resign or go on a leave of absence? If plaintiff did withdraw his resignation, or if the conclusion is justified that the President then finally decided that plaintiff should not resign, we assume that the President was without power to accept the resignation later.

From a careful study of the record it is clear to us that the President himself did not regard the question as closed at the interview; it seems obvious from what the President subsequently did that he did not understand that the resignation had been withdrawn, and that he evidently had not meant to finally decide at that time whether plaintiff should resign or go on a leave of absence.

This is evidenced, first, by the fact that he referred plaintiff's letter of resignation to the Attorney General for reply. His notation on it read: "Atty Gen to prep reply FDR." The proof shows that the Attorney General is the President's adviser on matters relating to the judiciary, and that he customarily prepares for submission to the President controversial letters relating thereto. The President's reference to him of plaintiff's letter of resignation was for the preparation of a suitable reply for his consideration. There was no direction as to the character of reply to be made. The Attorney General's advice was being requested. If the President had already decided that plaintiff should go on a leave of absence instead of resigning, there would have been no occasion to refer the matter to the Attorney General; anybody could have prepared the letter. But the President was not certain about the matter and wanted the Attorney General's advice, and so he referred the letter of resignation to him for the preparation of what he thought would be a suitable reply.

This is a strong indication that the President did not consider the matter as closed. It is difficult to escape the conclusion that he thought the resignation was still open.

Two days thereafter, having presumably heard from the Attorney General in the meantime, he wrote plaintiff as follows:

"March 26, 1942.

"Honorable William Clark,

"United States Circuit Court of Appeals,

"Princeton, New Jersey.

"My dear Bill:

"Since talking to you the other day, I have been advised that under the law your voluntary entry into the military service will not permit the retention of your commission as United States Circuit Judge.

"Under the circumstances I must regretfully accept your resignation from the judicial post.

"With appreciation for your long and able service, and for the patriotism which

has moved you to your present choice, I am

"Very sincerely yours,
"Franklin D. Roosevelt."

It is not reasonable to suppose that the President would have written plaintiff this letter unless he had understood that plaintiff's resignation was still open. The President would not have written a letter accepting a resignation that had been withdrawn. He at least would have referred to plaintiff's withdrawal, and would have stated that he thought plaintiff should allow his resignation to stand nevertheless.

The President's letter clearly shows he thought the matter was still open.

A few days later, on April 2, 1942, plaintiff wrote the President demurring to his acceptance of his resignation and suggesting that the letter of acceptance might well be withdrawn pending the passage of certain legislation to which he referred. The President replied by telegram:

"Your letter of April 2nd received. In view of the doubt which H.R. 6766 [sic] is intended to remove I think the wisest thing to do is to let your resignation stand.
"Franklin D. Roosevelt."

This was a reference to a standing resignation, not to one that had been withdrawn —"I think the wisest thing to do is to let your resignation stand."

We have no doubt that the plaintiff left the President under the impression that his resignation was still open. If he withdrew it at the interview or intended to do so, he did not succeed in conveying that intention to the President.

Nor do we think plaintiff was under the impression that he had withdrawn his resignation, or that the President had finally decided the question plaintiff may have presented to him. He does not claim that he expressly withdrew it. He does say that he did not say to the President that he was willing for his resignation to stand open; but he does not say that he withdrew it.

Plaintiff testified that there was some discussion of a leave of absence, and that the President inquired of him as to the condition of the docket of his court and that, upon his advising him that five judges on that court were at that time unnecessary and that he understood the senior judge of his circuit was writing him to that effect, the President replied, "If that is so, I will refuse your resignation." That ended the interview, plaintiff says, except that the President called in his secretary, Mr. Stephen Early, to whom he said: "Steve, this is Judge Clark, he is just offering his resignation to go into the Army. I have rejected it. He is doing a fine thing. Get out a nice statement and take him out through the White House."

Mr. Early's note of what the President said to him, as related to the Press, is that "the President asked Colonel William Clark to go on a leave of absence, instead of resigning from the Bench."

It is clear, however, that plaintiff did not regard the matter as closed.

In the first place, after the interview plaintiff told the correspondent of the Newark Evening News that he intended to consult the senior Circuit Judge of his Circuit relative to the President's suggestion that he take a leave of absence. This, of course, was for the purpose of ascertaining whether the senior Circuit Judge thought the business of the court would permit him to take a leave of absence instead of resigning. This indicates that plaintiff understood that the matter was still in abeyance.

But, more persuasive than this is plaintiff's reply to the President's subsequent letter accepting his resignation. In his letter of reply, dated April 2, 1942, hereinabove set out, he says nothing about having withdrawn it. Had he withdrawn it, he, as any other normal man, would have registered the most vigorous protest against the President's acceptance of it. Undoubtedly, he would have denied the President's right to accept it, and would have asserted his right to continue in the office. But he did none of this. Instead, he called attention to a pending bill which he claimed would make him "perfectly eligible" to hold a commission in the Army and his judicial office at the same time, and he said, "It is my suggestion, however, that

your recent letter might well be withdrawn pending a clarification of the legal situation."

This was not a demand, as it would have been if he had withdrawn his resignation; it was a "*suggestion*," showing that he understood the matter of the acceptance of his resignation was still to be decided.

Furthermore, if plaintiff had thought the matter had been closed, he would not have given the President his future address, to which a further reply might be sent. In his letter he said:

"My address from Saturday until probably Wednesday will be the Fairmont Hotel, San Francisco, where I could be reached by telegraph from General Watson,[2] or in any other way."

Four days later, plaintiff departed under military orders for Australia.

On April 7, 1942, the President wired plaintiff at the address given as follows:[3]

"Your letter of April 2nd received. In view of the doubt which H.R. 6766 [sic] is intended to remove I think the wisest thing to do is to let your resignation stand.

"Franklin D. Roosevelt."

This telegram did not reach plaintiff until sometime later, perhaps six months later, but he never made any reply to it.

Nothing more was said or done about the matter until the President appointed plaintiff's successor about a year later. Whether or not plaintiff knew of the appointment of his successor, we do not know, but he did not mention the matter again until about three months after his discharge from the Army, and about three years after the President's telegram of April 7, 1942, when he wrote the Attorney General making application to be restored to his judicial office "under section 8 of the Selective Service Act, 50 U.S.C.A.Appendix, § 308."

Plaintiff's conduct after his interview with the President is altogether inconsistent with the proposition that the matter was closed at that interview. We cannot hold that the resignation was withdrawn or should be considered as having been withdrawn, or that the President had finally decided the matter at his interview with plaintiff.

The resignation not having been withdrawn, it was within the President's constitutional power to nominate, and the Senate to confirm his successor. After this had been done, and the appointment had been made, if not earlier, plaintiff was no longer entitled to the salary of the office.

2. We think that plaintiff has no cause of action under the Service Extension Act of 1941, 55 Stat. 626, 627, as amended by the Act of December 8, 1944, 58 Stat. 798, 799, 50 U.S.C.A.Appendix, § 351 et seq. These Acts make the provisions of the Act of September 16, 1940, 54 Stat. 885, 890, as amended by the Act of July 28, 1942, 56 Stat. 723, 724, applicable to any person who entered upon active military or naval service at the time plaintiff did. Section 8(b) of the Act of September 16, 1940 provides in part:

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within forty days after he is relieved from such training and service—

"(A) if such position was in the employ of the United States Government, its Territories or possessions, or the District of Columbia, such person shall be restored to such position or to a position of like seniority, status, and pay; * * *."

Paragraph (B) of subsection (b) refers to a person holding a position with a private employer, and paragraph (C) refers to a person holding a position in the employ of a State or political subdivision thereof. In the case of a person in the employ of a private employer it is provided that he shall be restored to his position, and in the case of a person in the employ of a State or political subdivision thereof, it was "declared to be the sense of the Con-

---

[2] General Watson was one of the President's secretaries.

[3] We again quote this telegram because of its importance.

gress that such person should be restored to such position * * *."

Subsection (e) of section 8 gives a remedy against a private employer who fails to comply with the provisions of subsection (b) of section 8. A person in his employ is given the right to file a petition in the District Court to require the employer to restore him to his position, and also "to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action." Neither this section nor any other section of the Act gives any remedy in court to a person formerly in the employ of the United States Government who has not been restored to his position. Since a remedy in court was expressly given against a private employer, and no remedy in court was given to a person employed by the United States Government, it is at least open to doubt whether such person has a remedy in court. It may be that section 8(b) (B) was intended to be no more than a command to government agencies to restore the employee to his former position, but was not intended thereby to give rise to any cause of action against the United States Government for a failure to comply with it. Congress differentiated between employees of the United States Government and people in the employ of a private employer and people in the employ of a State or political subdivision thereof; only in the case of a person in the employ of a private employer was any remedy expressly given in the courts for a violation of the provisions of the Act. See Insular Police Comm. v. Lopez, 1 Cir., 160 F.2d 673; Ballf v. Kranz, 9 Cir., 82 F.2d 315.

But, whether or not it was intended that an employee of the United States Government should have a right of action against the Government for the refusal of any one of its agencies to comply with the provision of section 8(b) (A), we are satisfied it was not intended that this section should apply to a United States Circuit Judge who had resigned his position.

There is no doubt that a resignation by a judge and its acceptance by the President and the appointment of his successor and the assumption by the resigned judge of another position creates a vacancy in the office. The Selective Training and Service Act provides that one holding a position with the United States who goes into the military or naval service shall be treated as having taken a leave of absence, whether or not he resigned, and shall be restored to his position. If this be held applicable to a United States Circuit Judge, then it is obvious that Congress would thereby be directing the President whom to appoint to the vacancy. So construed, Congress would in effect be saying to the President: Even though plaintiff's resignation is an accomplished fact and a vacancy in the office has been thereby created, we want you to treat his resignation as merely the taking of a leave of absence, and we want you to withhold appointment of anyone else to the office, and when he returns from the military service, we want you to reappoint him.

Plainly this would be an encroachment on the powers of the President. Under the Constitution the President is given the power of nomination and of appointment, by and with the advice and consent of the Senate, of "ambassadors, other public ministers and consuls, judges of the Supreme Court and all other officers of the United States whose appointments are not herein otherwise provided for; but the Congress may by law vest the appointment of such inferior officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." The power of appointment of a United States Circuit Judge has never been vested in anyone other than the President, by and with the advice and consent of the Senate. Congress had no constitutional power to vest such authority in itself. It could vest it only "in the President alone, in the Courts of Law, or in the Heads of Departments." If the Selective Training and Service Act be construed to require the President to appoint plaintiff to the vacancy, it would be a plain usurpation of power by Congress. The discretion of selecting the person to fill the vacancy created by plaintiff's resignation was vested in the President and the Senate; this discretion

could not be exercised or controlled by the Congress. Congress could not substitute its judgment for that of the President.

Congress must be assumed to have been aware of this constitutional difficulty, if, indeed, it had thought at all that a judge might surrender his office to go into the military or naval service, and, therefore, it must be assumed that Congress did not intend to do that which it had no constitutional power to do.

In most districts in the United States there is but one district judge; it can hardly be supposed that Congress intended that the President should not fill the vacancy created by the resignation of one of them and leave that district throughout the duration of the war without a judge to carry on the court. Temporary appointments of district judges cannot be made; they must be appointed during good behavior.

If all the justices of the Supreme Court had resigned to enter the armed services, could Congress have intended that the President should not fill the vacancies, and thus leave the country without a Supreme Court? An extreme example, perhaps, but not without point.

██ United States judges were excluded as a class from the provisions of the Selective Training and Service Act [4] and were not subject to induction into the military or naval service thereunder, and we are of opinion that if a United States judge resigned his office and entered the military service, he did not thereby create a situation which would bring the judicial office, theretofore held by him, within the provisions of section 8(b) (A) and entitle him to claim the benefit which plaintiff claims under that section. It cannot be said that when Congress wrote section 8(a) and (b) (A) it intended, by implication, to include therein those classes or groups of officers and offices which it had expressly excluded from the provisions of the Act by section

5(c) (1). This section provides, so far as here material, that "The * * * judges of the courts of record of the United States, * * * shall, while holding such offices, be deferred from training and service under this Act in the land and naval forces of the United States." [5] The statute must be read as a whole when interpreting any provision thereof. Since Congress by section 5(c) (1) expressly deferred judges from induction into "the land and naval forces * * * under this Act," it must follow, we think, that the intention was also to exclude the judicial office or position from the provisions of section 8(a) and (b) (A) of the Act, even though a United States judge might voluntarily resign his judicial office and enter the service. We think that if Congress had otherwise intended, it would have expressed its intention in language sufficiently clear not to be misunderstood, especially in view of the nature of the judicial position, the manner in which an appointment thereto is made and the constitutional tenure of the person appointed to such position.

We are of opinion that plaintiff has no cause of action under the Act of September 16, 1940, as amended, and as extended by the Service Extension Act of 1941.

3. Since we are of opinion that plaintiff vacated his office by virtue of his letters of resignation, the acceptance of his resignation by the President—assuming plaintiff left to him the decision as to whether or not he should resign—and the nomination and confirmation and appointment of his successor, we find it unnecessary to consider the defendant's other defense, that plaintiff vacated his office of judge by the acceptance of a commission in the Army and the acceptance of the salary attached to his military office.

The plaintiff is not entitled to recover and his petition will be dismissed. It is so ordered.

---

[4] Section 5 (c) (1).

[5] This section is in full as follows: Sec. 5. * * * "(c) (1) The Vice President of the United States, the Governors * * * of the several States and Territories, members of the legislative bodies of the United States and of the several States and Territories, judges of the courts of record of the United States and of the several States and Territories and the District of Columbia, shall, while holding such offices, be deferred from training and service under this Act in the land and naval forces of the United States."

BOOTH, Chief Justice (retired), recalled, and LITTLETON, Judge, concur.

WHALEY, Chief Justice, and MADDEN and JONES, Judges, took no part in the consideration or decision of this case.