## KEPHART v. UNITED STATES.

### No. 47363.

Court of Claims.

Dec. 1, 1947.

Calvin I. Kephart, pro se.

S. R. Gamer, of Washington, D. C., and Herbert A. Bergson, Acting Asst. Atty. Gen. (Edgar T. Fell, of Baltimore, Md., on the brief), for defendant.

Before JONES, Chief Justice, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

HOWELL, Judge.

Plaintiff is an employee of the Interstate Commerce Commission, a department of the United States Government, Washington, D. C., as a Principal Trial Examiner in the Section of Complaints, Bureau of Motor Carriers.

On January 26, 1940, while a Senior Examiner, P–5 classification, plaintiff appealed to the Civil Service Commission for a reallocation of his position to that of Principal Examiner, grade P–6 classification, which appeal was, in accordance with the rules, filed with the Interstate Commerce Commission. The appeal was considered and denied by the Interstate Commerce Commission on August 9, 1940, whereupon plaintiff filed an appeal with the United States Civil Service Commission.

On August 22, 1940, the Civil Service Commission acknowledged receipt of the appeal and suggested the advisability of the matter being handled without a hearing in order to conserve time, to which plaintiff consented. Shortly thereafter, on October 14, 1940, plaintiff was called to active military duty as a member of the Officers' Reserve Corps component of the Army, pursuant to Public Resolution No. 96, approved August 27, 1940, 54 Stat. 858, 50 U.S.C.A. Appendix, § 401 et seq. He served for one year and was restored to a position with the Interstate Commerce Commission as a Senior Examiner, P–5 classification, and later, on June 5, 1942, was again called to active military service, being finally discharged because of age on November 12, 1943, at which time he was again restored to a position as Senior Examiner, P–5 classification.

At the time plaintiff was called to active duty in October 1940, the Civil Service Commission suggested that action on his appeal be suspended during his military service, to which plaintiff agreed with the understanding that it would not work to his injury and he duly kept the Civil Service Commission informed of his tour of military duty.

Following the plaintiff's final discharge from the armed services, the Civil Service Commission, on July 29, 1944, advised plaintiff and the Interstate Commerce Commis-

sion that the work plaintiff was performing at the time of call to the military service was properly allocable to grade P–6. The Interstate Commerce Commission requested the Civil Service Commission to reconsider the decision and in January 1945 the Civil Service Commission sustained its previous determination. Subsequently the Interstate Commerce Commision requested a ruling of the Comptroller General as to the date on which the reallocation should become effective and the Comptroller General ruled that the reallocation should be made effective as of January 1, 1945, January being the month during which the Civil Service Commission sustained its previous decision reallocating plaintiff to a grade P–6 classification. Plaintiff has received pay for his services accordingly.

Plaintiff contests the ruling of the Comptroller General as to the effective date of this reallocation and relies upon the provisions of the Public Resolution as amended by the Selective Training and Service Act, 54 Stat. 885, 50 U.S.C.A.Appendix, § 403 (c), contending that the reallocation should be made effective from the date of the appeal or from the date of his first tour of military duty, and seeks judgment for the difference in salary including administrative raises from that date. The ruling of the Comptroller General in this case was based upon a previous ruling of that office (4 Comp.Gen. 280) which has been followed for many years and the soundness of that ruling in a case not affected by the Acts of Congress relating to military service before and during World War II need not now be considered, as the court is of the opinion that plaintiff's case is controlled by those acts.

Under the Public Resolution as amended by the Selective Training and Service Act, a person who leaves a position in the employ of the United States Government, upon relief from military duty is to be restored to such position or to a position of like "seniority, status and pay", and, when so restored, "shall be considered as having been on furlough or leave of absence during his period of active military service" and "shall be so restored without loss of seniority." Sec. 8(d), Selective Training and Service Act, 54 Stat. 885, 890.

While plaintiff's appeal was pending during his first tour of active military duty from October 1940 to October 1941, the duties formerly performed by him and other P–5 examiners were divided and the more complex cases were assigned to examiners holding positions reallocated to grade P–6 classification. This, of course, left the less complex cases to be handled by the P–5 examiners; thus to restore plaintiff to a P–5 position handling cases of less complexity than those he formerly handled would not constitute a restoration to a position of like seniority, status, and pay. It might be said that to restore him as a P–6 Examiner would in a way be restoring him to a higher position that that which he left to enter the service but the division of work and the classification of the new positions for some of the work was a natural evolution of the Interstate Commerce Commission and if plaintiff is not permitted to be restored to a position in which he would be engaged on cases with the same relative complexity as when he left, he is being placed at a disadvantage upon his return from the service, which would be a demotion in every way except in pay. The Acts of Congress were clearly designed to prevent any disadvantage from accruing to a soldier because of his military service. Cf. Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110. These acts contemplate a restoration to the same relative position the soldier enjoyed when he left for service. Freeman v. Gateway Baking Co., D.C., 68 F.Supp. 383.

It is true that the Interstate Commerce Commission in their administrative discretion considered plaintiff with the other nine P–5 examiners for promotions to the P–6 positions and that they did not select plaintiff. However, it must be emphasized that the Civil Service Commission determined that the duties being performed by plaintiff at the time he entered military service were such as to be properly allocated to P–6. If this allocation were correct, the work of the P–5 examiners after the division of the work was of a lower allocation and classification than that which the plaintiff was performing when he entered the service. The law was clearly intended to preclude

restoration to work of a lower classification.

■ It is held therefore that restoration of plaintiff to a position of like seniority, status, and pay, on his return from the service in October 1941 required his restoration at the grade of P–6, from the date of the commencement of the pay period in which he entered the army. By such restoration the plaintiff can be given the rights intended by the various acts designed for the benefit of those who were required to enter the military service. Plaintiff is entitled to recover the difference in pay between that which he has actually received from the Interstate Commerce Commission and the pay to which he would have been entitled if he had been restored to a P–6 classification effective October 1, 1940.

Judgment will be entered in favor of plaintiff upon the filing of a stipulation by the parties showing the amount due plaintiff under the findings and the foregoing opinion. It is so ordered.

Plaintiff per se.

Trusty & Pugh, E. E. Pugh, Henry W. Buck, and Morrison, Nurgent, Berger, Hecker & Buck, all of Kansas City, Mo., for defendant.

REEVES, District Judge.

The only question presented is whether the local defendant was fraudulently joined for the purpose of defeating the jurisdiction of this court. On June 14, 1947, a memorandum opinion was filed, 72 F.Supp. 789, overruling the motion to remand. In that opinion it was pointed out that the local defendant was belatedly joined and that in depositions taken the proof did not support the averments of the complaint or at least it did not support all of the averments of the complaint.

In view of the background of the case the court applied the doctrine generally used, falsus in uno, falsus in omnibus, and treated the joinder of the local defendant as a fraudulent one. Since that decision counsel for the plaintiff have filed an amended complaint and in so doing have eliminated concededly erroneous averments. With a renewed motion to remand counsel appended an affidavit setting forth facts justifying the joining of the local defendant and explaining erroneous averments heretofore made. It is now made to appear that the local defendant was joined in good faith and that a joint liability is asserted in the amended complaint. Such complaint was filed by leave of court.

■ It is the rule in cases of this kind that the court will not question the motive of joinder in the case of a local defendant. The court looks to the complaint and if it states a joint liability the only remaining question is whether or not the averments

---

**BARBER v. DUNLOP TIRE & RUBBER CORPORATION et al.**

No. 4647.

District Court, W. D. Missouri, W. D.

Oct. 31, 1947.

