**Abraham AGRAN and Anne Agran, Plaintiffs,**

**v.**

**Theodore J. ISAACS et al., Defendants.**

**No. 69 C 773.**

United States District Court
N. D. Illinois, E. D.

Dec. 9, 1969.

Albert E. Jenner, Jr., Samuel W. Block, Joan M. Hall, Jenner & Block, Chicago, Ill., for defendants Frank V. McCullough, Philip E. Calo, Louis Goldblatt, George S. Harris, Bailey K. Howard, Ronald A. Landsman, David X. Meyers, Charles H. Sethness, Jr., Civic Capital Corporation, Charles F. Biersborn, Hugh M. Driscoll, Harold H. Stout, Joseph E. Knight, Richard A. Rauch, Harry H. Semrow and Leonard C. Tharnstrom.

Joel L. Miller, Chicago, Ill., for defendant Theodore J. Isaacs.

Jacob Shamberg, Chicago, Ill., for defendant Civic Center Bank and Trust Co.

George S. Feiwell, Chicago, Ill., for defendant Jerome Yavitz.

Defendants Ralph L. Atlass and Clarence E. Beutel were not represented.

Bernard H. Sokol, Sokol, Schwab & Agran, Chicago, Ill., for plaintiffs.

## MEMORANDUM AND ORDER ON "MOTION" OF SHERMAN H. SKOLNICK AND HARRIET SHERMAN

ROBSON, District Judge.

This court is asked to grant three requests embodied in papers bearing the

title of a "motion,"[1] but which in substance constitute a press release. The Skolnick papers purport to relate to a case pending before this court, Agran et al. v. Isaacs et al., 69 C 773.[2] First, Sherman H. Skolnick and Harriet Sherman ask leave to file their appearances pro se as *"amici curiae"* in the Agran case. Second, this court is asked to rescind its order of November 24, 1969, pertaining to confidentiality of internal bank and corporate documents produced pursuant to discovery conducted in the Agran case. Third, this court is asked to initiate an investigation of two named judges of the United States Court of Appeals, "and others." For the reasons set forth below, this court is of the opinion the "requests" should be denied.

The Agran case was filed by two minority shareholders of the Civic Center Bank. This civil suit was filed as a class action on behalf of all minority shareholders of that bank. The defendants in the Agran case are the officers and directors of the Civic Center Bank, as well as the president of the South East National Bank of Chicago. The gravamen of this action is alleged representations circulated by the defendants, and their alleged failure to disclose certain material facts in a proxy statement concerning a proposed merger between the Civic Center Bank and the South East National Bank of Chicago, and certain anticipated financing transactions related to the proposed merger. The plaintiffs further complain that the defendants concealed from them the fact that the proposed merger would dilute the value of their stock. The jurisdiction of this court is based upon Section 17 of the Securities Act of 1933, 15 U.S.C. § 77q, and Section 10(b) of the Securities Act of 1934, 15 U.S.C. § 78j, and related regulations.

 The Skolnick papers are totally irrelevant and not pertinent in any way to the above described issues pending before this court in the Agran case. Neither Skolnick nor Sherman are attorneys, nor do they purport to represent any of the parties involved in this litigation, nor do they own any stock in either of the banks involved. Rather, the Skolnick papers set forth libelous accusations and innuendoes disparaging the character and professional ethics of two judges of the United States Court of Appeals for the Seventh Circuit, and a judge of the Appellate Court of Illinois, whom Skolnick alleges are shareholders of the banks involved in this litigation.[3] None of the judges named by Skolnick are parties to the Agran case, although their interest, if true as alleged, would lie with the *plaintiffs*. *The accusations made by Skolnick have absolutely no bearing on the Agran case.* This is but another of a series of brazen and unfounded attempts by Skolnick to cause irreparable damage to the reputation of members of the judiciary and the legal profession. The records of this court alone reveal that since 1962, Skolnick has filed eighteen suits, many of which are against judges and officers of this court, and most of which constituted spurious and vindictive litigation.

The record also indicates that any judge ruling against Skolnick is likely to be subjected thereafter to vilification in the news media and often becomes the target of spurious but harassing litigation initiated by Skolnick. This court takes judicial notice of the fact that Skolnick distributed the so-called motion now under consideration to the news media and to this court simultaneously. He held immediate press conferences and interviews, and as a consequence, he appeared on all major news programs on local radio and television stations, and received front-page newspaper coverage concerning the vindictive matter contained in his so-called motion. Such

---

1. Hereinafter designated as the Skolnick papers.

2. Hereinafter designated as the *Agran* case.

3. One judge named is alleged to hold such stock "by reason of his late wife."

conduct, comments, and libelous misrepresentations concerning pending litigation, including misrepresentations as to the very nature of that pending litigation, violate the Canons of Ethics of the legal profession. Were Skolnick an attorney and as such an officer of this court, he would be subject to discipline and sanctions for such totally irresponsible and prejudicial misbehavior. The Skolnick papers are prepared and addressed to the news media to generate publicity, and are not addressed to this court to present legal considerations. In neither form nor substance are the Skolnick papers as such proper legal documents. It is a gross misrepresentation to dignify the person responsible for these documents as a "legal researcher." These papers are replete with reckless and sensational libelous accusations, and employ the most deplorable devices of guilt by association, innuendo, and trial by press. *The Skolnick accusations, whether true or not, have no possible bearing on the Agran case.* For these reasons, the papers should be stricken on the court's own motion as immaterial, impertinent, and scandalous. Rule 12 (f), Federal Rules of Civil Procedure.

Furthermore, neither Skolnick nor Sherman have any standing in the *Agran* case. Neither is an attorney nor represents any party to this litigation. The matter presented in these papers well demonstrates Skolnick's *modus operandi.* It is blatantly the product of a publicity-seeking informer, and self-styled chairman of a vigilante "committee" whose membership, if any, is secret and whose financial backing is equally shielded from public scrutiny. In the guise of filing a legal document in this matter, Skolnick has abused the processes of this court in order to give his unwanted and reckless accusations the appearance of having some substance. The request of Skolnick and Sherman to file their appearances pro se as friends of the court is therefore denied.

Because of the confusion and misconceptions generated by Skolnick and indiscriminately circulated in the news media, this court finds it necessary to discuss the merits of the two other improper requests presented in the Skolnick papers. On November 24, 1969, this court entered a protective order in the *Agran* case. The order was entered with the consent of all parties to the litigation. Protective orders are customary in civil litigation where internal, confidential corporate documents are produced for inspection by opposing counsel. *E. g.*, United States v. Provident National Bank et al., 41 F.R.D. 209 (E.D. Pa.1966). The order in question directs counsel to treat as confidential all documents produced during discovery which are conspicuously marked with the word "confidential." The material produced under the protective order may be viewed by plaintiffs' counsel, and may be disclosed to the plaintiffs themselves, and to other persons specially retained by them to assist in conducting this litigation. However, such material must be used only for purposes of this lawsuit, and shall not be disclosed to parties not involved in the conduct of this litigation. This court has no knowledge of the nature of the internal corporate documents to be produced pursuant to the order, nor has it yet ruled on the admissibility or purposes for which any documents so produced may be used within the context of this litigation. This is not a criminal charge nor are the defendants here charged with criminal conduct and as such are not required to meet the standards of a criminal action. Contrary to the irresponsible statements made by Skolnick in both his papers and in the news media, the purpose of the protective order is not to shield wrongful conduct, but is rather to protect two substantial functioning financial institutions and their customers, the general public. This court can only conclude that Skolnick's attack on this court's protective order is either due to his ignorance of customary procedures in civil litigation, or evidences his willful attempt to mislead and confuse the public and as a result ruin two financial institutions. By any standard, this, to say the least,

is despicable. This court will in no way lend itself to this action. The request to rescind the protective order is most manifestly improper.

■ Finally, the Skolnick papers request this court to institute an investigation of two judges of the United States Court of Appeals, "and others," who are allegedly shareholders of the Civic Center Bank and Trust Company. This request is unconstitutional on its face. It is axiomatic that only Congress is vested with the authority to conduct investigations of the federal judiciary. Impeachment proceedings may be initiated in the House of Representatives, but a federal judge can be removed only by resignation or conviction by the Senate of the United States. U.S.Const. Art. 1, § 3, cl. 6; Clark v. United States, 72 F.Supp. 594, 597, 109 Ct.Cl. 444 (1947), cert. den. 333 U.S. 833, 68 S.Ct. 457, 92 L.Ed. 1117 (1948). This request further demonstrates Skolnick's unscrupulous bombardment of this court and its judges and officials with spurious, malicious and libelous requests which may provide sensational headlines, but which any first-year law student would recognize as legally improper.

■ The judiciary and the news media have a common responsibility. Each in its way must and should protect the community from abuses by the legislative and the executive branches of government, from criminal activities, and have many other responsibilities too numerous to mention. There should and must be joint co-operation in carrying out these important duties. Each institution should therefore exercise the utmost discretion in seeing that completely irresponsible and unsubstantiated charges are neither entertained nor indiscriminately circulated.

These papers, like so many of Skolnick's prior "legal" forays, are an attempt to take advantage both of the news media and of the judiciary, to the ultimate detriment of the public interest. It is therefore ordered that the Skolnick papers be, and they are hereby stricken.