**In re Shearn MOODY, Jr., Debtor.**

**Shearn MOODY, Jr., Plaintiff,**

**v.**

**W. Steve SMITH, Trustee, Defendant.**

Civ. A. Nos. H–86–2314, H–85–1023, H–85–4647, H–86–2316, H–86–2317, H–86–2320, H–86–2321, H–86–3711, H–86–3839, H–86–3973, H–86–3974, H–86–4044, and H–86–4269.

United States District Court,
S.D. Texas,
Houston Division.

Feb. 28, 1989.

See also, 5th Cir., 849 F.2d 902.

Shearn Moody, Jr., pro se.

Ben B. Floyd, Bonham, Carrington & Fox, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER OF PERMANENT INJUNCTION

LAKE, District Judge.

1. Judge Carl O. Bue, Jr., one of the premier judges of this or any other court, has aptly described this case as one of the most bizarre and complicated Chapter 11 proceedings on record. One problem in this case has been the continuing proclivity of the Debtor to change counsel at critical junctures during the case. This has resulted in an inordinate amount of judicial atten-

tion and cost to the Estate. Since the Debtor filed for bankruptcy in November of 1983, he has been represented by at least four counsel. Mr. Moody's representation has included Jane Ford from June 1983 to November 1984; Briscoe Swan from November 1983 to May 1985; Vidal Martinez and other attorneys from Haight, Gardner, Poor & Havens from May 1985 to January 1986; and Martin Paul Solomon from January 1986 to February 3, 1989. Mr. Moody began representing himself *pro se* on February 3, 1989. The need for each new counsel to become familiar with the large and complex file has required additional time and has increased the potential cost to the Estate since each new counsel has sought or will seek to charge the Estate for the time and expenses involved in the familiarization process.

2. These problems were further exacerbated when, beginning in December of 1988, Barbara Youngs, a lay person not licensed to practice law, began filing pleadings on behalf of the Debtor, even though the Debtor was then represented by Attorney Solomon. Ms. Youngs has used various terms to describe her representation of the Debtor, including, "next friend," "fiancee," "witness," "paralegal assistant," "lay paralegal," "lay assistant," and "administrative assistant." She has also asserted guardianship and a limited power of attorney over Debtor's estate and affairs due to Debtor's signing of a Designation of Guardianship and a Limited Power of Attorney on December 2, 1988, thereby attempting to act as his agent. Ms. Youngs has also signed pleadings as "Barbara Youngs, Pro Se" and "Shearn Moody, Jr., Pro Se/BSY," and has even gone so far as to tape pieces of paper bearing Moody's alleged signature at the foot of papers that she prepared and then filed with the Court. In response to the Trustee's motions to strike and for sanctions, and since the Debtor had never filed a motion to substitute counsel or to proceed *pro se*, the Court held a hearing on February 3, 1989, and required the presence of the Debtor at the hearing.

3. Whether the spate of recent filings by Ms. Youngs was intended by her or the Debtor to further delay the final resolution of this proceeding, the Court cannot determine. The Court does find, however, that the effect of these filings has been to frustrate these cases by making it unclear to the Court and counsel which filings accurately represent the Debtor's position. Furthermore, the Trustee and other counsel have had to respond to Ms. Youngs' filings thereby increasing the expenses to all parties and the Estate.

4. Ms. Youngs is no stranger to proceedings of this type. Chief Judge James DeAnda previously found Ms. Youngs had demonstrated a pattern of harassing litigation, and by orders of July 25 and July 31, 1986, in H–85–431, *Barbara S. Youngs–Settle v. U.S.*, enjoined her from filing or intervening in any lawsuit pending in this district. The Order of Permanent Injunction dated July 25, 1986, states *inter alia* that Barbara S. Youngs–Settle "is hereby PERMANENTLY ENJOINED from filing, or intervening in, any lawsuits in the United States District Court for the Southern District of Texas.... Any attempt to evade or circumvent the terms of this order by plaintiff or anyone acting on her behalf or in concert with her shall result in criminal prosecution for contempt pursuant to 18 U.S.C. §§ 401, 402" (docket entry No. 129). In a lengthy Memorandum and Order of Dismissal, Judge DeAnda supported the injunction against Ms. Youngs with a detailed discussion of her long and stained history of frivolous litigation (No. 126). As of July 1986, this history included involvement in at least seven federal court lawsuits, all of which were described in some detail and were found to be meritless.

5. The Court finds that Ms. Youngs' attempt to file papers for and otherwise represent Shearn Moody, Jr., whether as his agent, paralegal or intermediary, violates 28 U.S.C. §§ 1651 and 1654 and Federal Rules of Civil Procedure 8, 11, and 12(e) and (f), as well as Judge DeAnda's order of permanent injunction.

6. It is well established that 28 U.S.C. § 1654 allows a party in the courts of the United States to plead and manage

his own causes personally or by the assistance of counsel, but a party is not allowed to have an unlicensed lay assistant act as an attorney under the banner of conducting his own defense. Unlicensed laymen are not permitted to represent anyone other than themselves. *Turner v. American Bar Association,* 407 F.Supp. 451, 478 (N.D.Tex.1975), *aff'd, Pilla v. American Bar Association,* 542 F.2d 56 (8th Cir. 1976). The Sixth Amendment affords the right of *self*-representation, not *lay* representation. *U.S. v. Wright,* 568 F.2d 142, 143 (9th Cir.1978); *U.S. v. Cooper,* 493 F.2d 473 (5th Cir.), *cert. denied,* 419 U.S. 859, 95 S.Ct. 108, 42 L.Ed.2d 93 (1974).

■ 7. Under 28 U.S.C. § 1651, if a party has demonstrated a pattern of frivolous, repetitious, and harassing litigation, a District Court is authorized to enjoin, *sua sponte,* the party from filing further papers in support of a frivolous claim. There is no constitutional right to prosecute frivolous issues or to file and prosecute motions designed to obstruct justice. *See Gordon v. U.S. Department of Justice,* 558 F.2d 618 (1st Cir.1977); *In re Martin–Trigona,* 737 F.2d 1254, 1261–62 (2d Cir. 1984); *Urban v. United Nations,* 768 F.2d 1497, 1500 (D.C.Cir.1985). An order of injunction pursuant to § 1651 extends to persons "in active concert or participation" with parties to an action under Fed.R. Civ.P. 65(d).

8. Fed.R.Civ.P. 8 authorizes the Court to strike any pleading that violates the general Rule 8 pleading requirements, or that contains material that is scandalous, immaterial or redundant. *Asay v. Hallmark Cards, Inc.,* 594 F.2d 692 (8th Cir. 1979); *Brainerd v. Potratz,* 421 F.Supp. 836 (N.D.Ill.1976). There are numerous Rule 8 violations by Ms. Youngs in this case. For example, in an Emergency Motion for Continuance and for Order Releasing Funds (No. 946), Ms. Youngs asserted that counsel for the Trustee has been illegally converting money of the Estate "by excessive compensation fees for doing nothing but frivolous litigation." In the same motion, Ms. Youngs alleged the existence of a malicious conspiracy by the U.S.

Marshal's Service to prevent Mr. Moody from preparing for hearings in this case and to cause Mr. Moody to have "a stroke, heart attack, or just plain kill him" because of the Marshal's Service's plan to transport Mr. Moody by airplane to Houston. Ms. Youngs also referred generally in that motion to "scandalous and outrageous behavior" committed by the federal judiciary, whose goal in handling Mr. Moody's civil actions is supposedly to "harass and belittle and humiliate" Mr. Moody. These same allegations also appear in the January 25, 1989, letter of Ms. Youngs (No. 947). The Emergency Motion to Recuse, Designate Judge, Certify Question and, Alternatively, Memorandum in Support of Petition for Writ of Mandamus and Prohibition (No. 942), drafted by Ms. Youngs, alleged *inter alia* a conspiracy "to continue the railroading of debtor's bankruptcy matters." These are just a few examples of the scandalous materials contained in numerous papers filed with the Court by Ms. Youngs. Since the pleadings filed by Ms. Youngs have failed to state clearly and concisely her claims so as to give fair notice to the opposing parties of any response they may be required to give, and since these pleadings also contain harassing allegations of conspiracy and other scandalous matters supposedly committed by the Court and counsel involved in Debtor's cases, the Court finds a basis under Rule 8 for prohibiting the filing of further pleadings by Ms. Youngs in the Debtor's lawsuits and for striking all pleadings previously filed by her.

9. Ms. Youngs' pleadings are also graphic violations of Rules 12(e) and (f). The Court recognizes that in motions practice "the particularity requirement is flexible ... and non-particularized motions have been allowed where the opposing party knew or had notice of the particular grounds being relied upon." 2A J. Moore, *Moore's Federal Practice,* paragraph 7.05 at 7–16 (2d ed. 1987). However, Ms. Youngs frequently veers off the course of her purported "Motions" to indulge in scurrilous, quasi-paranoidal personal attacks on various federal and state judges, parties

and attorneys in this action and third parties.

10. *Agran v. Isaacs*, 306 F.Supp. 945 (N.D.Ill.1969), is instructive in the present case. Two judicial "gadflies," Sherman Skolnick and Harriet Sherman, sought to intervene as *amici curiae* in a federal securities class action involving a proposed bank merger. The trial judge ordered the "motion to intervene" stricken under Rule 12(f):

> The Skolnick papers are totally irrelevant and not pertinent in any way to the above described issue pending before this court in the *Agran* case. Neither Skolnick nor Sherman are attorneys, nor do they own any stock in either of the banks involved. *Rather, the Skolnick papers set forth libelous accusations and innuendoes disparaging the character and professional ethics of two judges of the United States Court of Appeals for the Seventh Circuit, and a judge of the Appellate Court of Illinois*, whom Skolnick alleges are shareholders of the banks involved in this litigation. None of the judges named by Skolnick are parties to the *Agran* case, although their interest, if true as alleged, would lie with the *plaintiffs*. *The accusations made by Skolnick have absolutely no bearing on the Agran case.* This is but another of a series of brazen and unfounded attempts by Skolnick to cause irreparable damage to the reputation of members of the judiciary and the legal profession. The records of this court alone reveal that since 1962, Skolnick has filed eighteen suits, many of which are against judges and officers of this court, and most of which constituted spurious and vindictive litigation.
>
> The record also indicates that any judge ruling against Skolnick is likely to be subjected thereafter to vilification in the news media and often becomes the target of spurious but harassing litigation initiated by Skolnick.
>
> \*    \*    \*    \*    \*    \*
>
> In neither form nor substance are the Skolnick papers as such proper legal documents. It is a gross misrepresentation to dignify the person responsible for these documents as a "legal researcher." These papers are replete with reckless and sensational libelous accusations, and employ the most deplorable devices of guilt by association, innuendo, and trial by press. *The Skolnick accusations, whether true or not, have no possible bearing on the Agran case.* For these reasons, the papers should be stricken on the court's own motion as immaterial, impertinent, and scandalous. Rule 12(f), Federal Rules of Civil Procedure.

306 F.Supp. at 947–48. *See also Skolnick v. Hallett*, 350 F.2d 861, 862 (7th Cir.1965), *cert. denied*, 382 U.S. 996, 86 S.Ct. 580, 15 L.Ed.2d 482 (1966).

11. The pleadings filed by Ms. Youngs in this case are equally subject to being stricken under Rule 12(f). They are replete with scandalous, "reckless and sensational" accusations against various judges and respected local attorneys. Most of the material in these papers is not germane to the substance of the motions, and these pleadings, if left extant, would interfere with the proper functioning of the Court. As Judge Robson learned to his detriment in dealing with Mr. Skolnick, judicial gadflies such as Mr. Skolnick and, in this case, Ms. Youngs, are an unfortunate fact of life in a litigious society. Unless strong action is taken quickly to deny Ms. Youngs further access to this Court, all parties to this suit can anticipate further "unscrupulous bombardment of this Court and its judges and officials with spurious, malicious and libelous requests which may provide sensational headlines, but which any first-year law student would recognize as legally improper." *Agran v. Isaacs*, 306 F.Supp. at 949. *Cf. In re Beef Industry Antitrust Litigation*, 600 F.2d 1148, 1169 (5th Cir.1979).

12. The Court further finds that Ms. Youngs violated Fed.R.Civ.P. 11 by filing frivolous papers with the Court that do not conform to the requirements of the rules and have the effect of interfering with the prosecution of Debtor's lawsuits. Rule 11 allows the Court to strike sham and false pleadings, *Incomco v. Southern Bell Telephone & Telegraph Co.*, 558 F.2d 751, 753

(5th Cir.1977); *Day v. Amoco Chemicals Corp.,* 595 F.Supp. 1120, 1122–23 (S.D.Tex. 1984), *appeal dismissed,* 747 F.2d 1462, *cert. denied,* 470 U.S. 1086, 105 S.Ct. 1849, 85 L.Ed.2d 147 (1985), and also to impose sanctions tailored to particular abuses. *Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 878 (5th Cir.1988). In *Thomas,* the Court recognized that financial penalties are one of the most effective ways to deter frivolous pleadings. *Id.* at 877. Given the number and nature of the papers filed by Ms. Youngs and the warnings by the Trustee's motion papers that Ms. Youngs had no right to file such papers or allege the frivolous and harassing matters contained in them, a monetary sanction is necessary and appropriate. The Court finds that the sum of $15,000.00 was reasonably incurred by the Trustee in legal fees and other expenses in responding to Ms. Youngs' papers and ORDERS her to pay this sum to the Trustee within 30 days from the entry of this Order.

13. The suggestion by Ms. Youngs was that she was unaware that Rule 11 applied to lay persons is belied by the July 25, 1986, Memorandum and Order of Dismissal in H–85–431, and the March 12, 1986, order of sanctions in *Youngs–Settle v. U.S.,* H–85–2104, both of which sanctioned her and her attorney under Rule 11. These orders put her on notice that Rule 11 casts a broader net than licensed attorneys. *See Young v. I.R.S.,* 596 F.Supp. 141 (N.D.Ind. 1984) (Rule 11 applies to anyone who signs a pleading, motion or other paper, including *pro se* litigants).

14. In addition, a reasonable inquiry would have revealed that her "representation" of the Debtor in federal court, especially while he was then represented by licensed counsel of record, was strictly prohibited, and, as a result, that the relief she requested was not well grounded in fact or warranted by existing law. One who, like Ms. Youngs, assumes the mantle, however denominated, as an advocate for a party, cannot complain when improper conduct is subjected to the strictures applicable to attorneys. To allow such a person immunity from the Rules of Civil Procedure would lead to the absurd result that an attorney authorized to file pleadings could be subject to Rule 11 sanctions if they were not made in good faith, but that a lay advocate was immune from similar sanctions for the same conduct.

15. The violations by Ms. Youngs discussed above are not overcome by her argument that she is the "next friend" of the Debtor. A "next friend" is one who, without being a regularly appointed guardian, acts for the benefit of a person not *sui juris.* *Latcholia v. Texas Employers Insurance Association,* 140 Tex. 231, 167 S.W.2d 164 (1942). Fed.R.Civ.P. 17(c) states:

> Whenever an infant or incompetent person has a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. *An infant or incompetent person who does not have a duly appointed representative may sue by next friend or by a guardian ad litem.* The Court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

Under Rule 17(b) the question of whether a particular individual is an "infant or incompetent," is a matter to be determined by reference to the laws of the state of the individual's domicile. Accordingly, the Debtor's capacity to sue or be sued in his own right, or his status as a person *sui juris,* must be determined under Texas law.

16. "Incompetent persons" are defined by the Texas Probate Code § 3(p) (Vernon 1980 & Supp.1989), as:

> [P]ersons non compos mentis, mentally disabled persons, insane persons, common or habitual drunkards, and other persons who are mentally incompetent to care for themselves or to manage their property and financial affairs.

The statutory definition makes it clear that a person must be *mentally* incapable of caring for himself to be an "incompetent."

Any "disability" visited upon a person by reason of his physical incarceration does not render him "incompetent" for purposes of Rule 17 and Texas Probate Code § 3(p). Mr. Moody has made no claim of "incompetency" and testified in open court on February 3, 1989, that he was mentally competent to manage his property and financial affairs.

17. Nor, as Ms. Youngs argues, does Mr. Moody's status as a federal prisoner otherwise entitle Ms. Youngs to represent him as a "next friend." Prisoner status does not disable a person from litigating *pro se. Stephens v. Curtis*, 450 F.Supp. 141, 143 (S.D.Tex.1978). The case argued by Ms. Youngs in support of her right to appear as next friend for Moody is in fact antagonistic to her argument. In *Rosenberg v. U.S.*, 346 U.S. 273, 291–92, 73 S.Ct. 1152, 1161–62, 97 L.Ed. 1607 (1953), the Court strongly criticized the practice of allowing a next friend standing to litigate on behalf of defendants. Ms. Youngs' effort to invoke the doctrine of "next friend" is therefore wholly inappropriate and contrary to well established law.

18. Finally, any notion that Ms. Youngs' attempts to appear for Moody were compelled by purely altruistic motives is belied by the record. Ms. Youngs requested $90.00 per hour in fees for her work as a "paralegal" and an unstated percentage of Mr. Moody's prior living allowance of $2,500.00 per month for the "administrative costs" of her work for Mr. Moody. In her Affirmative Response of Debtor to Application for Post–Judgment Writ of Garnishment filed in H–86–2321 and in H–86–3974 (No. 25), Ms. Youngs stated that "she does qualify as a paralegal and is entitled to recover her time at the rate of $90.00 per hour." In the lengthy Declaratory Statement of Barbara S. Youngs Responsive to Information Given to the Court By Attorney Martin Paul Solomon filed in H–86–2314 (No. 927), pp. 35 and 39, Ms. Youngs suggested being paid from Mr. Moody's living allowance and from estate funds. In addition, Attorney Martin Paul Solomon provided a detailed list of other monetary requests by Ms. Youngs in open court on February 3, 1989.

19. Under the authority vested in the Court by the statutes and rules discussed above and the inherent power necessarily vested in a court to manage its own affairs so as to achieve the orderly and expeditious disposition of cases and to avoid congestion in its calendar, the Court finds that further involvement by Ms. Youngs of any type in this case is detrimental to the prompt and fair achievement of justice. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

20. The Court ORDERS and PERMANENTLY ENJOINS Barbara Youngs, her agents, servants, employees and those in active concert or participation with her from filing any document, letter, pleading or other paper however labeled and in whatever form in any of the following actions: H–86–2314, H–85–1023 (consolidated), H–85–4647, H–86–2316, H–86–2317, H–86–2320, H–86–2321 (except to the limited extent discussed in para. 21 below), H–86–3711, H–86–3839, H–86–3973, H–86–3974, H–86–4044, and H–86–4269, and from initiating any action having anything whatsoever to do with these actions.

21. The only arguable basis for Ms. Youngs' filing any pleading in any of the *Moody* bankruptcy actions was in response to the applications for writ of garnishment filed by the Trustee in H–86–2321, which included her as a potential garnishee. Those applications are now moot, and her ostensible role as a garnishee provides no basis for filing any additional paper in any of these actions. Should future garnishment be sought against Ms. Youngs, she, *pro se*, or her attorney may file appropriate papers concerning them. Given her past record of frivolous and harassing pleadings, the Court will carefully scrutinize such filings. Except to the limited extent of allowing Ms. Youngs to respond to future garnishment actions against her, the Clerk of the Court is INSTRUCTED not to file or docket any pleading, correspondence or other paper bearing Ms. Youngs' name in any of the actions listed in the preceding paragraph.

■ 22. The *pro se* filings by Mr. Moody before February 3, 1989, must also be addressed by the Court. A party who appears by counsel has no right to personally conduct, or assist counsel in conducting, the litigation of his case. While a litigant may appear in his own person or by attorney, he cannot do both. The right to counsel and right to proceed *pro se* exist in the alternative, so that a party has no right to hybrid representation. *U.S. v. La-Chance,* 817 F.2d 1491, 1498 (11th Cir. 1987), *cert. denied,* 484 U.S. 928, 108 S.Ct. 295, 98 L.Ed.2d 255 (1987). *See also U.S. v. Zielie,* 734 F.2d 1447 (11th Cir.1984), *cert. denied, Gustafson v. U.S.,* 469 U.S. 1189, 105 S.Ct. 957, 83 L.Ed.2d 964 and *Govern v. U.S.,* 469 U.S. 1216, 105 S.Ct. 1192, 84 L.Ed.2d 338 (1985); *U.S. v. Norris,* 780 F.2d 1207 (5th Cir.1986); *U.S. v. Shea,* 508 F.2d 82, 86 (5th Cir.), *cert. denied,* 423 U.S. 847, 96 S.Ct. 87, 46 L.Ed.2d 69 (1975). Since Martin Paul Solomon represented Mr. Moody until February 3, 1989, to the extent that any of the papers filed by Ms. Youngs may be, or purport to be, the work of Mr. Moody himself, they were improperly filed and are STRICKEN. Mr. Moody advised the Court at the February 3, 1989, hearing that he would be proceeding *pro se* as of that date. Therefore, the Clerk of the Court will accept pleadings signed by Mr. Moody and delivered or mailed by Mr. Moody to the Clerk on and after February 3, 1989.

23. The Clerk is instructed TO STRIKE the following papers improperly filed by Ms. Youngs and/or Mr. Moody:

(1) Motion for Leave to Proceed Pro Se and, Alternatively, for Certification of Question (No. 911)[1];

(2) Motion to Substitute Counsel (No. 912);

(3) Certified copy of Amended Affidavit Submitted in Support of Motion to Proceed in Forma Pauperis (No. 913);

(4) Motion to Vacate Agreed Stipulation of Dismissal and, Alternatively, Motion to Reopen as Debtor in Possession (No. 914);

(5) Notice of Appeal (No. 917);

(6) Motion to Stay Pending Appeal (No. 918);

(7) Motion for Leave to Proceed on Appeal in Forma Pauperis (No. 923);

(8) Motion to Remove Trustee W. Steve Smith and to Disqualify Trustee's Hired Attorney Ben Floyd and Accounting Firm of Seidman & Seidman (No. 924);

(9) Declaratory Statement of Barbara S. Youngs Responsive to Information Given to the Court by Attorney Martin Paul Solomon (No. 927);

(10) Emergency Motion to Compel Trustee to Pay Debtor's Living Allowance (No. 929);

(11) Debtor's Motion to Perfect and Amend as Brief (No. 932);

(12) Motion to Strike Ex Parte Hearing by Affidavit Statements of Barbara S. Youngs filed in 86–2314 (No. 935), 86–2321 (No. 71), and 86–3974 (No. 23);

(13) Emergency Motion to Recuse, Designate Judge, Certify Question and, Alternatively, Memorandum in Support of Petition for Writ of Mandamus and Prohibition filed in 86–2314 (No. 942), 86–2321, and 86–3974 (No. 22);

(14) Garnishee Barbara S. Youngs, Motion For Leave to Intervene as Next Friend to Debtor in 86–2314 (No. 943), in 86–2321 (No. 69), and in 86–3974 (No. 21);

(15) Garnishee Barbara S. Youngs, Notice of Filing in 86–2314 (No. 944), in 86–2321 (No. 70), and in 86–3974 (No. 22);

(16) Barbara S. Youngs, Motion to Strike Ex Parte Hearing by Affidavit Statement and Notice of Filing (No. 945);

(17) Emergency Motion for Continuance and for Order Releasing Funds (No. 946);

(18) Letter of January 25, 1989, from Barbara Youngs to the U.S. Marshal (No. 947);

(19) Memorandum Supporting Emergency Motion For Continuance and for Order Releasing Funds and Petition for Rehearing (No. 950);

---

**1.** Unless otherwise noted, the docket entry numbers are in Case No. H–86–2314.

(20) Motion for an Order of Assistance in the Transfer from the B.O.P. to the Houston Area to Appear in Court as Ordered (No. 952);

(21) Judicial Notice Relevant to the Debtor's Pending Motions for Continuance and Release of Funds from Registry of Court (No. 955);

(22) Emergency Motion for Stay of Bankruptcy Proceedings and for Immediate Ruling on Motion for Release on Bond as to Pending Request for Mandatory Hearing Rule 201 and Proof of Service filed in 86–2314 (No. 957), and 86–2321 (No. 88); and

(23) Objection of Shearn Moody Jr. to Trustee's Proposal and Motion of Moody National Bank of Galveston, and, Alternatively, Motion to Vacate Order for Hearing as Procedurally Void with Supporting Declaratory Statement of Barbara S. Youngs filed in 86–2321 (No. 81) and 86–3974 (No. 27).

24. Since this order enjoins Ms. Youngs, to the extent she disagrees with the Court's order, and desires to appeal from it, it will not be necessary for her to file further papers with this Court. 28 U.S.C. § 1292(a)(1) provides her adequate redress to the Court of Appeals, and this Court has previously denied her motion to stay the effect of the Court's order of injunction. Violation of this order by Ms. Youngs or anyone acting on her behalf or in concert with her may result in criminal prosecution for contempt pursuant to 18 U.S.C. §§ 401 and 402.

25. In summary, the Court ORDERS Ms. Youngs to pay the sum of $15,000.00 to the Trustee within 30 days from entry of this Order to compensate the Trustee for legal fees and other expenses reasonably incurred in responding to Ms. Youngs' papers (para. 12); ORDERS and PERMANENTLY ENJOINS Ms. Youngs and anyone in active concert with her from filing further papers in H–86–2314 and the related causes of action listed in this Order (para. 20); INSTRUCTS the Clerk not to file or docket any paper bearing Ms. Youngs' name for filing in H–86–2314 and the related actions, except to the limited extent explained above (para. 21); and ORDERS that the papers improperly filed by Ms. Youngs or Mr. Moody in H–86–2314 and the related actions be STRICKEN.