# NO. 12-07-00479-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *KITTISIA BROWN PARMER,*<br>*APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW #2* |
| *EDUARDO MALECIO DEJULIAN*<br>*AND MONICA OLIVERA,*<br>*APPELLEES* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Kittisia Brown Parmer appeals the trial court's summary judgment in favor of Eduardo Malecio DeJulian and Monica Olivera. Parmer raises seven issues on appeal. We affirm.

## BACKGROUND

On October 9, 2003, DeJulian was driving a vehicle owned by Olivera when he was involved in an accident with Parmer. On October 6, 2005, Parmer sued DeJulian and Olivera and attempted to have both defendants served with citation. Later that same month, the citations for both DeJulian and Olivera were returned unexecuted. On December 7, 2006, Parmer filed a motion for citation by publication. The trial court granted the motion on December 29, 2006, and on April 30, 2007, a new citation was issued for both DeJulian and Olivera. According to the record, the Tyler Morning Telegraph published the citations. DeJulian and Olivera filed a general answer and alleged two affirmative defenses, one of which was that Parmer's action was barred by the applicable statute of limitations. DeJulian and Olivera then filed a traditional motion for summary judgment. In Parmer's response to the motion for summary judgment, she attached two affidavits, her own and her

husband's, which included an unsworn attachment.

In her affidavit, Parmer claimed that after the citations were returned unexecuted, she instructed her husband to "undertake whatever action was necessary to find the Defendants DeJulian and Olivera in order that they may be served with process." Parmer claimed that the four month delay in issuing citation by publication was the result of misinformation from the clerk's office and the trial court's office. In the attachment to Parmer's husband's affidavit, he claimed that he spent two months visiting DeJulian's and Olivera's previous homes and contacting residents of the surrounding houses in an attempt to locate them or someone who knew their whereabouts. Then, for four months, he also contacted Hispanic residents of Tyler on the street, in neighborhoods, and at various stores, and asked these persons if they knew DeJulian or Olivera. He then spent one month searching for DeJulian and Olivera on an internet database. Parmer's husband stated that, from this search, he learned DeJulian purchased a car from a North Tyler dealership. Although he contacted the dealership, no one had heard of DeJulian. For another month, after two weeks of inactivity, he again contacted random Hispanic residents of Tyler and conducted the same internet search. He then spent two and one half months attempting to obtain DeJulian's and Olivera's addresses from his insurance company, which was also DeJulian's and Olivera's insurance company. At the same time, he continued his practice of contacting random Hispanic residents of Tyler and conducting the same internet search. Finally, Parmer's husband spent two months researching information on the owners of the properties where DeJulian and Olivera had lived, and calling random businesses in Tyler, Texas to see if either DeJulian or Olivera worked there. None of Parmer's husband's actions resulted in locating either DeJulian or Olivera.

DeJulian and Olivera objected to both affidavits. On November 20, 2007, the trial court held a hearing on the motion for summary judgment. At the close of the hearing, the trial court sustained DeJulian and Olivera's objections to Parmer's summary judgment proof, and granted summary judgment for DeJulian and Olivera. This appeal followed.

## STANDARD OF REVIEW

In reviewing a traditional motion for summary judgment, we must apply the standards established in *Nixon v. Mr. Property Mgmt., Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985), which are

as follows:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*See id.*; *May v. Nacogdoches Mem'l Hosp.,* 61 S.W.3d 623, 628 (Tex. App.–Tyler 2001, no pet.). For a party to prevail on a motion for summary judgment, she must conclusively establish the absence of any genuine issue of material fact, and that she is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c). A defendant who moves for summary judgment must either negate at least one essential element of the nonmovant's cause of action or prove all essential elements of an affirmative defense. *See Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1995); *see also MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex. 1986). Since the burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex. 1965). We are not required to ascertain the credibility of affiants or to determine the weight of evidence in the affidavits, depositions, exhibits, and other summary judgment proof. *See Gulbenkian v. Penn,* 252 S.W.2d 929, 932 (Tex. 1952). The only question is whether an issue of material fact exists. *See* Tex. R. Civ. P. 166a(c).

Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678-79 (Tex. 1979). All theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *See* Tex. R. Civ. P. 166a(c). We will not reverse a summary judgment due to an issue that was not expressly and timely presented to the trial court by written response or other document. *Corona v. Pilgrim's Pride Corp.*, 245 S.W.3d 75, 82 (Tex. App.–Texarkana 2008, pet. denied); *see also Brown v. Reeter*, 170 S.W.3d 151, 154 (Tex.

App.–Eastland 2005, no pet.). The nonmovant must present all issues relied upon to defeat summary judgment by a written response to the motion and not just mere reference to summary judgment evidence. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993).

"Summary judgment evidence must be admissible under the rules of evidence." *Doncaster v. Hernaiz*, 161 S.W.3d 594, 601 (Tex. App.–San Antonio 2005, no pet.). We review a trial court's evidentiary rulings related to a motion for summary judgment for an abuse of discretion. *Cantu v. Horany*, 195 S.W.3d 867, 871 (Tex. App.–Dallas 2006, no pet.). When a trial court acts "without regard for any guiding rules or principles," it abuses its discretion. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). An appellant bears the burden of bringing forth a record that demonstrates the trial court abused its discretion when it sustained appellee's objections to the summary judgment evidence. *Cantu*, 195 S.W.3d at 871. Further, the trial court's evidentiary ruling must be upheld if there is any legitimate basis for the ruling. *Malone*, 972 S.W.2d at 43.

When a suit is filed before limitations expired but the defendant is not served until after the limitations deadline, the defendant must affirmatively plead the limitations defense, and show that service was not effected until after limitations expired. *Proulx v. Wells*, 235 S.W.3d 213, 215-16 (Tex. 2007). Then, to avoid an adverse judgment, the plaintiff must explain the delay in service, including what efforts were made to serve the defendant and every lapse in effort or period of delay. *Id.* at 216. If the plaintiff's explanation for the delay raises a material fact issue concerning the diligence of the plaintiff's service efforts, the burden shifts back to the defendant to conclusively show why, as a matter of law, the explanation is insufficient. *Id.*

### PRESERVATION OF ERROR

In her first and second issues, Parmer argues that the trial court erred in granting summary judgment because she was exempt from the limitations requirement of section 16.003 of the Texas Civil Practices and Remedies Code pursuant to title 28, section 2415(b) of the United States Code. Further, she contends that mutual participation in the judicial process by all parties constitutes the equivalent of proper service and, therefore, any argument related to improper service is moot.

A nonmovant to a motion for summary judgment must present all issues relied upon to defeat summary judgment by a written response to the motion, and not just merely reference summary

judgment evidence. *See McConnell*, 858 S.W.3d at 341. In Parmer's response to DeJulian and Olivera's motion for summary judgment, she raised only the issue of her due diligence in attempting to serve DeJulian and Olivera as a basis for denying the motion. Because Parmer did not assert in her response that her action was covered by title 28, section 2415(b) of the United States Code, or that participation by DeJulian and Olivera renders moot their argument related to improper service, she did not preserve these issues for our review. *See Corona*, 245 S.W.3d at 82.

Even if we reached the merits of Parmer's first and second issues, however, the result would not change. First, title 28, section 2415(b) of the United States Code applies to claims for money damages brought by the United States or an officer or agency thereof that are founded upon a tort, and provides a three year statute of limitations for those claims. 28 U.S.C.A. § 2415(b) (West 1994). But Parmer brought this claim on her own behalf, not on behalf of the United States or an agency of the federal government. Consequently, the applicable statute of limitations for Parmer's action is found in section 16.003 of the Texas Civil Practices and Remedies Code. Section 16.003 provides a two year statute of limitations for personal injury suits. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon 2002). Therefore, the trial court did not abuse its discretion in applying the two year statute of limitations to Parmer's suit.

Second, contrary to Parmer's argument, DeJulian and Olivera's answer did not waive the issue of service of process occurring after the limitations deadline. According to Parmer, *City of Tyler v. Beck* stands for the proposition that when both parties participate in the litigation or matter of controversy, formal citation requirements are met. *See City of Tyler v. Beck*, 196 S.W.3d 784, 787 (Tex. 2006). That case involved this state's eminent domain scheme and condemnation procedure, a two part process that begins with an administrative proceeding to be followed, if necessary, by a judicial one. *Id.* at 785. The issue was whether service of citation was the exclusive means of invoking the judicial portion of the process. *Id.* at 786. The supreme court held that the parties' filing objections to the commissioners' award and sending a copy to the opposing party served the same purpose. *Id.* at 785-86. However, Parmer's lawsuit is not governed by the condemnation statutes and, thus, *Beck* is inapposite.

Parmer's first and second issues are overruled.

In her fourth, fifth, sixth, and seventh issues, Parmer argues that the trial court erred in sustaining DeJulian and Olivera's hearsay objections to her summary judgment evidence. She further argues that the trial court erred in granting DeJulian and Olivera's motion for summary judgment because a fact issue existed as to whether Parmer exercised due diligence in serving DeJulian and Olivera.

## Objections to Affidavits

Parmer's summary judgment evidence consisted of two affidavits, her own and her husband's, which included an unsworn attachment. DeJulian and Olivera objected to paragraph seven of Parmer's affidavit, alleging that it contained inadmissible hearsay. In this paragraph, Parmer explained the alleged misinformation she received from the trial court's office and the clerk's office relating to the trial court's order granting her motion for citation by publication. Parmer alleges that this misinformation led to the four month delay from the time the trial court granted the order to the issuance of the citations. DeJulian and Olivera also objected to Parmer's husband's affidavit in its entirety. In their objections, they alleged that Parmer's husband could not serve DeJulian and Olivera with process because he was an interested witness, Parmer's previous affidavit contradicted Parmer's husband's affidavit, and the attachment to Parmer's husband's affidavit was not sworn to and, thus, constituted inadmissible hearsay.

The trial court sustained DeJulian and Olivera's objections to Parmer's summary judgment proof. In her brief, Parmer argues that the trial court's rulings sustaining DeJulian and Olivera's objections were an abuse of discretion because her husband was not attempting to serve DeJulian and Olivera himself. Instead, she claims that he was merely attempting to locate DeJulian and Olivera so that they could be served by the appropriate authorities. Even under a liberal construction of Parmer's brief, these statements do not constitute a concise argument relating to the trial court's hearsay rulings. *See* TEX. R. APP. P. 38.1(h). Because Parmer did not provide an adequate substantive analysis of the hearsay issue, she has presented nothing for our review. *See id.* Moreover, Parmer does not challenge the trial court's rulings on DeJulian and Olivera's other objections to the affidavit of Parmer's husband. Therefore, we cannot conclude that the trial court abused its discretion in sustaining DeJulian and Olivera's objections to Parmer's affidavits.

**Due Diligence**

When a plaintiff brings a cause of action within the applicable statute of limitations, but serves the defendant after limitations expired, the statute of limitations is not tolled unless the plaintiff exercised reasonable diligence in procuring the issuance and service of citation. *See Webster v. Thomas*, 5 S.W.3d 287, 289 (Tex. App.–Houston [14th Dist.] 1999, no pet.). To avoid an adverse judgment, the plaintiff must explain the delay in service, including what efforts were made to serve the defendant and every lapse in effort or period of delay. *Proulx*, 235 S.W.3d at 216. If the plaintiff's explanation for the delay raises a material fact issue concerning the diligence of the plaintiff's service efforts, the burden shifts back to the defendant to conclusively show why, as a matter of law, the explanation is insufficient. *Id.* In determining whether a plaintiff exercised diligence in serving a defendant, the "relevant inquiry is whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances and was diligent up until the time the defendant was served." *Id.* Generally, this will be a question of fact. *Id.* The plaintiff's diligence is determined by examining the time taken to secure citation, service, or both, and the type of effort, or lack thereof, expended. *Id.* It is not enough that a plaintiff presents evidence that some efforts to procure service were made; actions that are careless and not persistent may demonstrate lack of diligence as a matter of law. *Webster*, 5 S.W.3d at 291. And even persistent, but ineffective, activity may demonstrate a lack of diligence as a matter of law if an ordinarily prudent person would not have acted similarly under the same or similar circumstances. *See id*. (concluding as a matter of law that plaintiff failed to use due diligence because her actions were not prudent); *Carter v. MacFadyen*, 93 S.W.3d 307, 314-15 (Tex. App.–Houston [14th Dist.] 2002, pet. denied) ("A flurry of ineffective activity does not constitute due diligence if easily available and more effective alternatives are ignored.").

DeJulian and Olivera affirmatively pleaded the limitations defense, and showed that service was not effected until after limitations expired. *See Proulx*, 235 S.W.3d at 215-16. Parmer allowed more than a year to elapse without attempting to serve DeJulian or Olivera after their citations were returned unexecuted. Further, she allowed an additional four months to elapse from the time the trial court granted her motion for citation by publication to the time that she obtained citations to be served upon DeJulian and Olivera. To avoid an adverse summary judgment, Parmer was required

7

to explain the delay in service including efforts made to serve the defendants and every lapse in effort or period of delay. *See id.* at 216. Although Parmer attempted to explain the delay in service through her and her husband's affidavits, the trial court sustained DeJulian and Olivera's objections to Parmer's affidavits. Consequently, the trial court could not consider Parmer's affidavits containing her explanation for the delay in service. Because Parmer presented no other summary judgment evidence to explain the delay in service, she did not raise a material fact issue as to her due diligence. Therefore, the trial court did not abuse its discretion in granting summary judgment to DeJulian and Olivera.

Even if the trial court had not sustained DeJulian and Olivera's objections to Parmer's affidavits, the outcome would be the same. According to the affidavits, Parmer never hired an investigator or a private process server to locate DeJulian and Olivera. Instead, she simply relied on her husband's efforts, which largely involved contacting Hispanic strangers on the street and asking them if they knew DeJulian and Olivera. That those efforts failed to lead to the whereabouts of DeJulian and Olivera comes as no surprise. While Parmer's husband claimed to be very persistent in these actions, we are reminded that a "flurry of ineffective activity does not constitute due diligence if easily available and more effective alternatives are ignored." *See Carter*, 93 S.W.3d at 314-15. Not only did Parmer ignore the more effective alternatives of hiring an investigator or private process server, but, for more than a year, she also ignored the alternative of substituted service through citation by publication. Further, she allowed an additional four months to elapse before obtaining the citations by publication. Parmer's actions in attempting to serve DeJulian and Olivera demonstrated a lack of due diligence as a matter of law. Therefore, the trial court did not abuse its discretion in granting summary judgment.

Parmer's fourth, fifth, sixth, and seventh issues are overruled.

## REPRESENTATION IN COURT BY PARMER'S HUSBAND

In her third issue, Parmer contends that the trial court erred by not allowing her husband to represent her in the November 20, 2007 hearing. At trial, Parmer alleged that her husband held a power of attorney that allowed him to serve as her attorney in fact. We have reviewed the record and found no evidence of a power of attorney. However, Parmer attached a copy of a power of attorney

to her reply brief. We cannot consider documents attached to an appellate brief that do not appear in the record. *Till v. Thomas*, 10 S.W.3d 730, 733 (Tex. App.–Houston [1st Dist.] 1999, no pet.). We must determine a case on the record as filed, and may not consider documents attached as exhibits to briefs. *Id.*

Even if Parmer had properly presented her husband's power of attorney to the trial court, her husband would not have been able to argue on her behalf. Rule 7 of the Texas Rules of Civil Procedure provides that "[a]ny party to a suit may appear and prosecute or defend his rights therein, either in person or by an attorney of the court." TEX. R. CIV. P. 7. As such, Parmer may appear on her own behalf and prosecute or defend her own rights. *Id.* Parmer, however, is not allowed to have her husband, an unlicensed lay assistant, act as an attorney on her behalf. *See In re Moody*, 105 B.R. 368, 370 (S.D. Tex. 1989) (stating that unlicensed laymen are not permitted to represent anyone other than themselves); *Shafer v. Frost Nat'l Bank*, No. 14-06-00673-CV, 2008 WL 2130418, at *3 (Tex. App.–Houston [14th Dist.] May 22, 2008, no pet.) (mem. op., not designated for publication). Moreover, even though a power of attorney designates another as the principal's "attorney in fact" or agent, it is not an authorization to practice law. *See Harkins v. Murphy & Bolanz*, 51 Tex. Civ. App. 568, 570, 112 S.W. 136, 138 (Dallas 1908, writ dism'd).

Parmer's third issue is overruled.

## DISPOSITION

Having overruled Parmer's seven issues, the judgment of the trial court is ***affirmed***.

BRIAN HOYLE
Justice

Opinion delivered September 17, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

9